

# In the
# Missouri Court of Appeals
## Western District

IN THE INTEREST OF: E.R., )
                                     )
                     Respondent, )   **WD86297**
                                     )
CHILDREN'S DIVISION, )   **OPINION FILED:**
                                     )   **FEBRUARY 13, 2024**
                   Respondent, )
                                     )
v. )
                                     )
A.G., )
                                     )
                     Appellant. )

### Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Kevin Duane Harrell, Judge

Before Special Division: Gary D. Witt, Chief Judge, Presiding, Cynthia L. Martin, Judge and James E. Welsh, Special Judge

A.G. ("Mother") appeals from the trial court's judgment terminating her parental rights to E.R. ("Child"). Mother argues on appeal that the trial court's judgment erroneously failed to consider and make findings about the factors set forth in section 211.443[1] in making a determination that termination of parental rights was in Child's best interest. Finding no error, we affirm.

---

[1]All statutory references are to RSMo 2016 as supplemented through August 4, 2020, unless otherwise indicated.

**Factual and Procedural History[2]**

Mother gave birth to Child in 2018.[3] Child first came to the attention of the Children's Division in November 2018 due to allegations of domestic violence and substance abuse.[4] The Children's Division recommended family centered services, including intensive in-home services and substance abuse treatment, in an effort to keep Child in the home. Mother voluntarily engaged in the recommended services.

In early February 2019, Mother went to the emergency department at Truman Medical Center, and reported that she was septic and needed medical attention. Hospital staff reported that Mother was acting erratically. An examination determined that Mother was not septic and was instead suffering from a panic attack following a miscarriage. Mother admitted to hospital staff that she used methamphetamine two days earlier when she was not in the presence of Child. A urine test done at the hospital revealed the presence of amphetamines. Mother informed hospital staff that Child was in her vehicle and unattended. A nurse went to the vehicle to retrieve Child and a diaper bag so that hospital staff could care for Child while Mother was being treated. The diaper bag contained approximately ten personal identification cards that did not belong to Mother

---

[2]When reviewing a judgment terminating parental rights, we view the facts and inferences drawn therefrom in the light most favorable to the judgment. *In Interest of D.L.S.*, 606 S.W.3d 217, 220 n.1 (Mo. App. W.D. 2020).

[3]The trial court's judgment erroneously finds that Child was born in 2019. Child's birth certificate, which was entered into evidence as an exhibit, indicates that Child was born in 2018.

[4]The domestic violence allegation stemmed from an incident between Mother and the man with whom she was living at the time, and the substance abuse allegation arose as a result of Mother testing positive for methamphetamines while she was on parole.

and a notebook that included names, dates of birth, and social security numbers of several people. Mother was arrested and taken into police custody upon her discharge from the hospital. The Children's Division took Child into its care.

On February 4, 2019, the Jackson County, Missouri Juvenile Officer ("Juvenile Officer") filed a petition alleging that Mother neglects Child in that she "exhibits aggressive and violent behaviors and has substance abuse issues." The trial court immediately entered an order for temporary protective custody over Child. On April 4, 2019, the Juvenile Officer filed an amended petition, and Mother stipulated that there was clear, cogent, and convincing evidence to sustain the allegations contained therein. On April 8, 2019, the trial court sustained the Juvenile Officer's amended petition, and found that Child needed care and treatment.

Mother initially participated in the services offered to her by the Children's Division. Mother made consistent progress toward reunification with Child such that visits had progressed to overnight visits and the Children's Division was discussing a trial home placement. However, in September 2019, Mother's participation in services became erratic as she began missing visits with Child and failed to submit to mandatory urinalyses. In October 2019, Mother was discharged from a drug treatment program for lack of participation. In November 2019, Mother was not at her house on a day that she was scheduled to have a visit with Child, and Mother could not be located. The Children's Division learned that Mother had been arrested in Kansas after she was found in a vehicle with methamphetamine and weapons. In December 2019, Mother was

arrested after she was found slumped over the steering wheel of a vehicle while appearing intoxicated. Mother has been incarcerated since her December 2019 arrest.

On August 4, 2020, the Children's Division filed a petition seeking to terminate Mother's parental rights to Child ("TPR Petition").[5] The TPR Petition alleged that terminating Mother's parental rights was appropriate in that: (1) pursuant to section 211.447.2(1), Child has been in foster care for at least fifteen of the most recent twenty-two months; (2) pursuant to section 211.447.5(2), Child has been abused or neglected; (3) pursuant to section 211.447.5(3), Child has been in the trial court's jurisdiction for more than a year and the conditions which led to the assumption of jurisdiction still persist and are unlikely to be remedied in the near future; and (4) pursuant to section 211.447.5(5)(a), Mother is unfit to be a party to the parent-child relationship. The TPR Petition further alleged that terminating Mother's parental rights is in Child's best interest.

Mother entered into two stipulations prior to trial, and both were entered into evidence. In Exhibit 33, Mother stipulated that the Children's Division "has sufficient evidence of a clear, cogent, and convincing nature . . . to find grounds for termination of parental rights" pursuant to section 211.447.5(2). Exhibit 33 further stipulated that the only issue to be determined by the trial court was whether terminating Mother's parental rights is in the best interest of Child. Exhibit 34 expressed Mother's agreement with the Children's Division and Child's guardian ad litem that should the trial court deem

---

[5]The TPR Petition also sought to terminate the parental rights of J.G.V. (Child's biological father), R.G. (Child's legal father to whom Mother reported that she was married at the time of Child's birth), and John Doe. Neither J.G.V. nor R.G. filed an appeal from the trial court's judgment terminating their parental rights.

guardianship to be the most appropriate permanency plan for Child, there are resources willing to pursue guardianship.

The trial took place over the course of several days in September and October 2022. The trial court received exhibits from the parties, and heard testimony from the Children's Division caseworker assigned to Child's case and from Mother regarding the best interest of Child. At the conclusion of the evidence, Child's guardian ad litem recommended that Mother's parental rights be terminated.

The trial court entered its findings of fact, conclusions of law, and judgment ("Judgment") on January 23, 2023. The Judgment accepted and adopted Mother's stipulations in Exhibit 33, and found that the stipulated facts established abuse or neglect as a ground for terminating Mother's parental rights pursuant to section 211.447.5(2). The Judgment then considered the best interest factors set forth in section 211.447.7 and found as follows: (1) Child does not have significant emotional ties to Mother; (2) Mother engaged in behaviors she knew were likely to interfere with her visitation with Child; (3) Mother provided minimal support for the cost of care and maintenance of Child; (4) additional services provided to Mother would not likely bring about lasting parental adjustment that would allow Child to be returned to Mother's care; (5) Mother demonstrated a disinterest in and lack of commitment to Child; (6) Mother's incarceration would deprive Child of a stable home for years; and (7) Mother's behaviors have exhibited a lack of parental capability, and a lack of understanding of her duty to protect Child and how her actions could interfere with the parent-child relationship. The Judgment concluded that it is in Child's best interest to terminate Mother's parental rights.

On February 16, 2023, Mother filed a motion to correct, amend, modify, and vacate the Judgment ("Motion to Amend the Judgment"). Mother argued that the Judgment should be amended to include findings regarding the considerations set forth in section 211.443, and that the failure to do so violated the statute as well as Mother's liberty interests against government interference in violation of the Fourteenth Amendment's due process clause. The Motion to Amend the Judgment then asserted that, had the trial court made findings regarding the considerations set forth in section 211.443, the trial court would have concluded that terminating Mother's parental rights was not in Child's best interest and that the appropriate permanency plan for Child is guardianship. The trial court did not rule on the Motion to Amend the Judgment so that the Judgment became final as a matter of law on May 17, 2023 pursuant to Rule 81.05(a)(2)(A).[6]

Mother filed this timely appeal.[7]

## Standard of Review

"Strict and literal compliance with the statutory requirements relating to termination of parental rights is necessary," and "[s]pecific judgment language is critical." *In Interest of D.L.P.*, 638 S.W.3d 82, 96-97 (Mo. App. E.D. 2021). Whether

---

[6]All Rule references are to Missouri Supreme Court Rules (2023), unless otherwise indicated.

[7]Mother prematurely filed her notice of appeal in the trial court on May 16, 2023. Rule 81.05(b) deems a premature notice of appeal filed on the day the Judgment became final.

the trial court strictly complied with statutory requirements in determining the best interest of Child is a question of law that we review *de novo*. *Id.* at 96.

## Analysis

Mother argues that the trial court erroneously applied the law because it failed to consider and make findings about the factors described in section 211.443 when it determined that termination of Mother's parental rights was in Child's best interest, and that as a result, the Judgment severed the parent-child relationship in violation of the guarantee to due process set forth in the Fourteenth Amendment to the United States Constitution and article I, section 10 of the Missouri Constitution.[8]

Section 211.447 describes the procedure for terminating parental rights. The trial court must find clear, cogent, and convincing evidence that a statutory ground for terminating parental rights exists pursuant to either section 211.447.2, .4, or .5. Section 211.447.6. And, the trial court must find by a preponderance of the evidence that terminating parental rights is in the child's best interest. *Id.* Mother challenges only the trial court's best interest finding.

---

[8]The Children's Division asserts that Mother invited this error because she made no reference to section 211.443 in Exhibit 33, Mother's stipulation to a statutory ground for terminating her parental rights that identified the best interest determination as the only issue the trial court needed to address. However, Mother's stipulation was not required to signal what she believed to be relevant to the best interest determination in order to preserve for our review her claim that the trial court should have considered and made findings about section 211.443 factors. Mother adequately preserved the issue she raises on appeal by bringing her concern to the trial court's attention in her Rule 78.07(c) Motion to Amend the Judgment. *In Interest of D.L.P.*, 638 S.W.3d at 95 ("To preserve for appellate review the trial court's failure to make statutory findings in a termination judgment, an appellant must move to amend the judgment under Rule 78.07(c).").

7

In making the required best interest determination, section 211.447.7 expressly provides that the trial court "shall evaluate and make findings on the following factors, when appropriate and applicable to the case:"

(1) The emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

(5) The parent's disinterest in or lack of commitment to the child;

(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

The trial court's judgment "must include findings on the [best interest factors set forth in section 211.447.7] such that a reviewing court can be assured the trial court properly considered the statutory factors in deciding whether to terminate parental rights." *In Interest of J.G.W.*, 613 S.W.3d 474, 488 (Mo. App. E.D. 2020).

Mother acknowledges that the trial court's Judgment made the statutory findings required by section 211.447.7. Mother does not challenge that the evidence supports the trial court's section 211.447.7 findings. Mother argues, however, that the trial court was

also required to consider and to make findings about the factors set forth in section 211.443 in determining Child's best interest, even though the plain language of section 211.447.7 makes no reference to section 211.443.

Section 211.443 provides:

The provisions of sections 211.442 to 211.487 shall be construed so as to promote the best interests and welfare of the child as determined by the juvenile court in consideration of the following:

(1) The recognition and protection of the constitutional rights of all parties in the proceedings;

(2) The recognition and protection of the birth family relationship when possible and appropriate; and

(3) The entitlement of every child to a permanent and stable home.

When the General Assembly intends to require a trial court to make written statutory findings, it has demonstrated it knows how to do so. Unlike the plain and unambiguous directive in section 211.447.7, section 211.443 includes no language compelling the trial court to "evaluate and make findings" on the considerations identified in section 211.443, whether in connection with a best interest determination or otherwise. We will not imply an unexpressed statutory requirement to make written findings into the plain language of section 211.443. *See Jackson v. Mo. State Bd. of Nursing*, 673 S.W.3d 917, 921 (Mo. App. W.D. 2023) (holding that statutory interpretation requires us to give effect to legislative intent as reflected in the plain language of the statute).

Though section 211.443 requires sections 211.442 to 211.487 to be construed in a manner that "promote[s] the best interests and welfare of the child as determined by the juvenile court," the commonly understood meaning of the undefined term "construe" does

not contemplate written statutory findings. *Union Elec. Co. v. Mo. Pub. Serv. Comm'n*, 591 S.W.3d 478, 485 (Mo. App. W.D. 2019) (holding that a term not defined in a statute is to be afforded the plain and ordinary meaning of the word as derived from the dictionary). "Construe" means "to analyze the arrangement and connection of words in (a sentence or part of a sentence)." *Webster's Third New International Dictionary* 489 (1961). Thus, the obligation to "construe" sections 211.442 to 211.487 to promote the considerations set forth in section 211.443 requires nothing more than sensitivity to the stated considerations should a court be required to analyze the meaning of sections 211.442 to 211.487. In other words, section 211.443 identifies factors to guide a court's statutory interpretation; it does not identify facts on which a trial court must make findings in determining whether termination of parental rights is appropriate in an individual case.

Undeterred, Mother asserts that *In re Adoption of C.M.B.R.*, 332 S.W.3d 793 (Mo. banc 2011), *abrogated on other grounds by S.S.S. v. C.V.S.*, 529 S.W.3d 811 (Mo. banc 2017), supports her argument that statutory findings about the considerations set forth in section 211.443 are required. We disagree. In *In re Adoption of C.M.B.R.*, in the context of addressing the difference between chapter 211 and chapter 453, our Supreme Court noted that section 211.443 "requires a court to consider and protect both the best interest of the child and the constitutional rights of all the parties when construing its termination of parental rights provisions." *Id.* at 807. This acknowledgement of the plain language of section 211.443 cannot be fairly construed, however, to engraft an unstated obligation to make written statutory findings into section 211.443.

10

We conclude that the trial court did not erroneously apply the law in failing to make findings in the Judgment about the considerations set forth in section 211.443.

Mother's point on appeal is denied.

**Conclusion**

The Judgment is affirmed.

_Cynthia L. Martin_
_____
Cynthia L. Martin, Judge

All concur